IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEPRINO FOODS COMPANY,

    Third-Party Plaintiff,

v.

TEXAS STATE INSULATION,

    Third-Party Defendant/Third-Party Plaintiff,

v.

GOLD KEY, INC., Individually and d/b/a GOLD
KEY INSURANCE, and ATLANTIC CASUALTY
INSURANCE COMPANY,

    Third-Party Defendants.

ATLANTIC CASUALTY INSURANCE
COMPANY,

    Counter-Plaintiff/Third-Party Plaintiff,

v.

TEXAS STATE INSULATION, RAFAEL RAMOS,
JR., ERNESTO QUINTERO, and LEPRINO
FOODS COMPANY,

    Counter-Defendant/Third-Party Defendants.

Civ. No. 11-72 JP/ACT

MEMORANDUM OPINION AND ORDER

On December 1, 2010, Atlantic Casualty Insurance Company (ACIC) filed Atlantic Casualty Insurance Company's Motion for Summary Judgment (Doc. No. 18) (Motion for Summary Judgment).[1]  Having reviewed the briefs and relevant law, the Court determines that

---

[1] The Motion for Summary Judgment was originally filed in Civ. No. 09-855 JP/ACT, Doc. No. 176, prior to the severance of this case on January 20, 2011.  *See* Memorandum Opinion and Order (Doc. No. 1), filed in Civ. No. 11-72 JP/ACT.

ACIC's fact number 18 should not be stricken and that the Motion for Summary Judgment should be granted.

*A. Background*

This case arises from a July 21, 2008 incident in which Ernest Quintero, an employee of Texas State Insulation (TSI), injured his hand while on the roof of a plant owned by Leprino Foods Company (Leprino) and located in Roswell, New Mexico. Quintero had left a designated walkway (whether on purpose or not is disputed) on the roof and fell towards a ventilation fan which caught and injured his hand.

The following facts are undisputed unless otherwise noted.

*1. Relevant Contractual Relationships*

TSI had entered into a contract with Leprino on May 17, 2007 to serve as an insulation contractor for the Leprino plant in Roswell. TSI agreed in the contract to be responsible to Leprino "for the acts and omissions" of TSI employees "performing portions of the Work."[2] Ex. C (Doc. No. 22-3), Part II, ¶E. TSI also agreed to assume "all risks of damages or injuries, including death, to any property or persons used or employed on or in connection with the Work, and all risks of damages or injuries, including death, to any property or persons wherever located, resulting from any action, omission or operation under the Contract or in connection with the Work." *Id*. at Part III, ¶G (1). In addition, TSI agreed to "protect, defend, indemnify and save harmless" Leprino for any incidents "arising out of or in any way connected with the alleged violation by [TSI] of any safety order, rule, regulation, or requirement, whether such

---

[2] Although the contract is dated May 17, 2007, the owner of TSI, Rafael Ramos, Jr., did not sign the contract until May 24, 2007 and the plant manager for Leprino did not sign the contract until May 31, 2007.

violation is ultimately proved or not." *Id*. at Part III, ¶E (1).  TSI further waived any contribution rights against Leprino, and TSI more generally agreed to "protect, save, defend, indemnify and hold harmless" Leprino from "any claims, damages ..., losses, suits, actions, administrative proceedings, demands, judgments, royalties, interest, liens ..., costs, and expenses" or from any liability related to TSI's performance of the contract or its employees "for whose acts it may be liable, whether or not caused in part by the active or passive negligence or other fault of" Leprino.  *Id*. at Part III, ¶G (3).

On April 3, 2008, Gold Key, Inc., individually and d/b/a Gold Key Insurance (Gold Key), an insurance broker, submitted an Artisan Contractors Application on behalf of Rafael Ramos, Jr. to obtain commercial general liability insurance for TSI.  The Artisan Contractors Application named Leprino as an additional insured and listed as an exclusion AGL-C-2XPUN, "Injury to Employees/Contractors/Employees of Contractors."  Ex. A1 (Doc. No. 19-2) at 2.  Gold Key submitted the Artisan Contractors Application over the internet utilizing the McClelland & Hine, Inc. Insurance Application Program.  McClelland & Hine, Inc. is an excess and surplus lines agent for ACIC.

On April 23, 2008, McClelland & Hine, Inc. issued a Binder Confirmation to Gold Key for the commercial general liability insurance requested by Ramos.  The Binder Confirmation listed AGL-C-2XPUN, "Injury to Employees/Contractors/Employees of Contractors," as a mandatory exclusion. Ex. A2 (Doc. No. 19-3) at 2.  On May 5, 2008, McClelland & Hine, Inc., on behalf of ACIC, issued a commercial general liability insurance policy, Policy No. L086020521 (the Policy), to TSI and Ramos which included Leprino as an insured.  The Policy was effective from April 5, 2008 to April 5, 2009.

The Policy's Common Policy Declarations lists a Commercial General Liability Coverage Form and AGL-C-2XPUN, "Exclusion of Injury to Employees, Contractors and Employees of Contractors," as forms under the Policy. Ex. A3 (Doc. No. 19-4) at 2.  The Commercial General Liability Coverage Form states in Exclusion b that the Policy does not apply to contractual liability in the event there is a bodily injury "for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Ex. A (Doc. No. 22-1) at Sec. I, ¶2.b.  This exclusion, however, does not apply if liability for damages is "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' ... occurs subsequent to the execution of the contract or agreement." *Id*. at Sec. I, ¶2.b.(2).  The AGL-C-2XPUN exclusion states, in pertinent part, that

> [t]his insurance does not apply to:
>
>> (i) "bodily injury" to any "employee" of any insured arising out of or in the course of:
>>
>>> (a) Employment by any insured; or
>>> (b) Performing duties related to the conduct of any insured's business....
>
> ... This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

Ex. A3 (Doc. No. 19-4) at 3.  The Policy further provides that "[w]here there is no coverage under this policy, there is no duty to defend any insured." *Id*. at 4

On May 14, 2008, Gold Key mailed a letter and the Policy to TSI.  Gold Key, through Elsa Sierra, stated in the letter that she was "attaching the policy for [TSI] to review carefully and add to [its] records for future reference.  I know insurance policies are not the most exciting material to 'read', but it is important [TSI] review the information contained in the policy."  Ex. I (Doc. No. 21-1) at 4.

At no time prior to the time Quintero injured his hand on July 21, 2008 did TSI or Ramos question the inclusion of AGL-C-2XPUN in the Policy.  Leprino notes that it did not receive a copy of the Policy until after Quintero filed a state lawsuit against Leprino and others on July 28, 2009 to recover damages for his hand injuries.  Leprino also did not have any communications with ACIC or McClelland & Hine, Inc. prior to the commencement of Quintero's lawsuit.

Finally, ACIC would not have issued a commercial general liability insurance policy to Ramos and TSI without including AGL-C-2XPUN.  In fact, previous ACIC insurance policies issued to Ramos and TSI in 2004, 2005, 2006, and 2007 included AGL-C-2XPUN.

*2. Facts Related to Quintero's Injuries*

At the time Quintero injured his hand, Leprino had in place General Safety Requirements and Practices which required that workers "not take short cuts" and that workers use "appropriate" paths.  Doc. No. 20-1 at 1.  The General Safety Requirements and Practices instructed contractors, like TSI, to inform their employees 1) not to enter into fan enclosures, 2) to "travel directly from the parking areas to their assigned work areas," and 3) to restrict their activities to their assigned work areas.  Doc. No. 20-2.

Apparently, several ventilation fans at the Roswell Leprino plant were located on the roof and to the side of a designated walkway on the roof.  A TSI supervisor had instructed TSI employees to stay on the walkway while on the roof and not to actually walk on the roof. The TSI supervisor also advised employees not to go near the ventilation fans.

Pedro Hernandez, a TSI employee and witness to the incident in which Quintero injured his hand, testified in his deposition that the ventilation fan which caused Quintero's injuries was "pretty far" from the work area.  Depo. of Pedro Hernandez (Doc. No. 20-4) at 26.  Pedro Hernandez, in a Witness Statement and Reporte de Accidente del Supervisor, noted that on July

21, 2008 TSI employees, including Qunitero, were walking on the roof walkway at the Roswell Leprino plant on their way to eat their lunch at a designated area off the roof. Quintero was behind the other TSI employees. Pedro Hernandez stated that he heard a ventilation fan behind him make a noise and then heard Quintero yell, "My fingers, my fingers." Depo. of Richard Rivera, Doc. No. 20-6 at 69 (interpreting Pedro Hernandez's Witness Statement and Reporte de Accidente del Supervisor). Quintero stated in an Employee Accident Report that as he was walking he tripped on an object which caused him to fall towards the ventilation fan and resulted in his hand getting caught in the fan.

Richard Rivera, a TSI investigator, testified in his deposition that although the location of the ventilation fan that injured Quintero was not a work place for TSI employees, it was common practice for TSI employees, including Quintero, to leave the walkway to go in front of the fan to cool off. Rivera further testified that to cool off in front of the ventilation fan a person had to squat or kneel down in front of the fan. Rivera inferred from this information that Quintero must have left the walkway, knelt in front of the ventilation fan to cool off, lost his balance, and then fell forward with his hand striking the fan. TSI, Ramos, and Leprino contend that this is how Quintero injured his hand.

   *3. Legal Actions Stemming from Quintero's Injuries*

As a result of the hand injuries, Quintero was awarded workers' compensation benefits from the State of Texas. This award was apparently based on an Employers [sic] First Report of Injury or Illness which stated that Quintero was "[w]alking on a roof and tripped on an object and left hand ended up inside a blower venting machine." Appendix/Supplement to Atlantic Casualty Insurance Company's Brief to Leprino Foods Company, TSI and Rafael Ramos and Gold Key, Inc's [sic] Responses to Motion for Summary Judgment (Doc. No. 24) (ACIC

6

Appendix/Supplement) at 2.  *See also* Confirmation of Claim Receipt ("EE walking on roof, tripped on object, L hand ended up insid [sic]," ACIC Appendix/Supplement at 5.  Quintero subsequently filed a state lawsuit for damages resulting from the hand injuries.  Quintero sued Leprino, the New York Blower, Industrial Accessory Company, Northland Processing Piping, Inc., and Aircorp, Inc.  The Defendants later removed the state lawsuit to federal court, Civ. No. 09-855 JP/ACT.

Leprino then filed a third-party complaint against TSI for indemnification and breach of contract.  TSI, in turn, filed a third-party complaint against Gold Key and ACIC.  TSI brings claims against Gold Key and ACIC for breach of contract, for violations of the Unfair Insurance Practices Act and the Unfair Trade Practices Act, and for negligent misrepresentation.  TSI also brings a claim against ACIC for insurance bad faith, and seeks a declaration that Leprino is covered by the Policy, that ACIC is obliged to defend Leprino in Quintero's lawsuit, and that ACIC is obliged to indemnify Leprino for Quintero's damages, if necessary.

Next, ACIC filed a counterclaim against TSI and a third-party complaint against Ramos, Quintero, and Leprino.  ACIC seeks a declaratory judgment against TSI, Ramos, Leprino, and Quintero which declares that ACIC does not have a "duty to defend or provide coverage or policy benefits to TSI, Rafael Ramos, Jr., Leprino and Ernest Quintero."  Atlantic Casualty Insurance Company's Counterclaim and Third-Party Complaint for Declaratory Judgment (Doc. No. 106) at 7, filed in Civ. No. 09-855 JP/ACT.  Shortly after ACIC filed its counterclaim and third-party complaint, Leprino filed a counterclaim against ACIC for a declaratory judgment seeking a declaration that ACIC owes a duty to defend and indemnify Leprino for the claims brought against it by Quintero.

After all of these actions were filed, the Honorable Senior United States District Court Judge LeRoy Hansen severed the insurance related claims from the initial lawsuit by Quintero. The insurance related claims are the subject of this lawsuit, Civ. No. 11-72 JP/ACT. Both Civ. No. 09-855 JP/ACT and Civ. No. 11-72 JP/ACT subsequently were reassigned from Judge Hansen to me.

ACIC now moves for summary judgment on the TSI and Leprino claims and on ACIC's action for declaratory judgment against TSI, Ramos, Leprino, and Quintero.  ACIC contends that AGL-C-2XPUN excludes Quintero's hand injuries from coverage under the Policy because his injuries arose out of or in the course of employment by TSI, an insured.[3]  TSI and Ramos, together, argue that ACIC's fact number 18 should be stricken and that a genuine issue of material fact exists as to whether Quintero's injuries arose out of or in the course of his employment by TSI.  Leprino adopts by reference the arguments set forth by TSI and Ramos, and asserts that the Policy covers Quintero's injuries because the Exclusion b exception for insured contracts applies and because there is an ambiguity in the Policy based on conflicting language in Exclusion b and AGL-C-2XPUN.  Gold Key responded to the Motion for Summary Judgment to clarify the facts but does not address whether there is a genuine issue of material fact regarding the Policy's coverage.  Quintero did not respond to the Motion for Summary Judgment.  *See* Notice of Completion of Briefing (Doc. No. 25).

---

[3]Although ACIC, TSI, Ramos, and Leprino also mention AGL-C-2XPUN's provision excluding injuries which arise out of or in the course of "[p]erforming duties related to the conduct of any insured's business," the focus of the arguments are on the "arising out of or in the course of employment" language.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C. Discussion*

    *1. Is There a Genuine Issue of Material Fact Concerning Whether AGL-C-2XPUN Applies to Quintero's Injuries to Exclude Coverage Under the Policy?*

        *a. ACIC's Fact Number 18*

ACIC contends initially that AGL-C-2XPUN excludes Policy coverage for Quintero's injuries because, as ACIC states in its fact number 18, Quintero alleged in his second amended complaint that he "was an employee of TSI and was engaged in work within the course and scope of his employment with TSI at the Leprino Plant located in Roswell, New Mexico, when he was injured." Atlantic Casualty Insurance Company's Memorandum in Support of Motion

for Summary Judgment (Doc. No. 19) at 7.  TSI and Ramos move to strike fact number 18 because it is based on a second amended complaint which has been superceded by a third amended complaint and because Quintero's allegation in the second amended complaint was not a declaration verified as true under penalty of perjury.  *See* 28 U.S.C. §1746 (unsworn declarations made under penalty of perjury have the "same force and effect" as a sworn statement).  ACIC does not dispute these objections by TSI and Ramos but instead argues that since Quintero was awarded Texas workers' compensation benefits, TSI's workers' compensation carrier necessarily determined that Quintero's injuries arose out of and in the course of his employment.  A "compensable" injury under the Texas Workers' Compensation Act is defined as "an injury that arises out of and in the course and scope of employment...."  Tex. Labor Code Ann. §401.011 (10) (amended effective Sept. 1, 2009 but does not amend previous definition).

It appears from the Texas workers' compensation documentation that the determination to award workers' compensation benefits to Quintero was based solely on Quintero's statement that he tripped on an object and fell into the ventilation fan.  There is no indication that the Texas workers' compensation carrier considered or even was aware of Rivera's contention that Quintero left a designated walkway without authorization to go near a ventilation fan which TSI employees were told to stay away from.  The Texas workers' compensation determination is, therefore, of limited use in deciding whether ACIC is entitled to summary judgment on its assertion that Quintero's injuries meet the AGL-C-2XPUN exclusion.  Nonetheless, rather than striking fact number 18, it would be appropriate for the Court to consider fact number 18 in the context of all of the facts regarding the Motion for Summary Judgment.

*b. Construction of AGL-C-2XPUN: Employee Injury Exclusion*

ACIC refers to New Mexico workers' compensation cases to support its argument that Quintero's injuries arose out of or in the course of his employment with TSI, and that, therefore, AGL-C-2XPUN excludes Quintero's injuries from coverage. The New Mexico Workers' Compensation Act, like the Texas Workers' Compensation Act, permits workers' compensation claims when a worker has sustained an injury "arising out of and in the course of his employment...." NMSA 1978, §52-1-28 (A)(1) (1987). However, the general consensus among the courts, including New Mexico courts, is that "arising out of" language in the insurance policy context should be broadly construed and not restricted to the interpretation given under workers' compensation law. *See, e.g., Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) ("[T]he general consensus [is] that the phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'-that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense."); *Krieger v. Wilson Corp.*, 2006-NMCA-034 ¶14, 139 N.M. 274 ("Our courts have interpreted the phrase 'arising or in any way resulting from' broadly in the insurance context."); *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 536 (Fla. 2005) ("[T]he law in most other states is consistent with the broad interpretation of the phrase 'arising out of' in *Hagen* and other Florida cases."); *Truck Ins. Exchange v. Gagnon*, 2001-NMCA-092 ¶16, 131 N.M. 151 (phrase "arising out of" in an employee exclusion provision "need not be governed by the meaning of the phrase under the Workers' Compensation Act (WCA)."). *See also* David L. Leitner, Reagan W. Simpson, and John M. Bjorkman, 1 *Law and Practice of Insurance Coverage Litigation* §6:22 (database updated July 2010) (describing employee exclusion provision as broad); Allan D. Windt, 3 *Insurance Claims and Disputes*

11

§11:14 (5th ed.) ("The exclusion is not limited to claims that are covered by workers' compensation insurance."). The New Mexico Court of Appeals explained that "arising out of" means "'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *Baca v. New Mexico State Highway Dept.*, 82 N.M. 689, 692, 486 P.2d 625, 628 (Ct. App. 1971). In other words, only "some causal connection or a sufficient nexus" is needed to meet the "arising out of" language. *See Krieger*, 2006-NMCA-034 ¶14 (citing *Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F.Supp. 822, 836-37 (D.N.M. 1994)). The phrase "in the course of employment" has, likewise, been given a broad construction in the insurance policy context. *See Prescott Companies, Inc. v. Mt. Vernon Fire Ins. Co.*, ___ F.Supp.2d ___, 2010 WL 1495430 *3 (S.D. Cal.) (agreed with Defendant who argued that "in the course of employment" has a broad meaning encompassing "injuries sustained while the employee was engaged in activities incidental to or reasonably related to the employment."); *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1333 (M.D.Fla. 2009) ("Thus, an employer's liability exclusion for bodily injury to an employee 'arising out of and in the course of employment' encompasses claims that are potentially broader than workers' compensation obligations and may have only a limited causal relationship to employment."); Allan D. Windt, 3 *Insurance Claims and Disputes* §11:14 (5th ed.) ("Courts have broadly construed the phrase *in the course of employment*.").

     A broad construction of "arising out of or in the course of employment," however, appears  contrary to the general principle in New Mexico that insurance policy exclusions be construed narrowly. *See Estep v. State Farm Mutual Auto. Ins. Co.*, 103 N.M. 105, 109, 703 P.2d 882, 884 (1985). Although the New Mexico courts have not addressed this specific conflict, the Tenth Circuit Court of Appeals addressed a similar conflict with respect to an Oklahoma insurance case. *Federal Ins. Co.*, 157 F.3d at 804. The Tenth Circuit observed that

12

some states construe "arising out of" in exclusionary clauses more restrictively than if the same phrase appeared in an inclusionary clause while other states apply that same phrase similarly in both exclusionary and inclusionary clauses. *Id*. at 804-05. The Tenth Circuit held as follows: "Because we do not believe that we can make a principled distinction in meaning simply based upon where in the [insurance] contract the phrase 'arising out of' appears, we decline to assign it a more restrictive meaning simply because it appears in the context of an exclusionary clause." *Id*. at 805. The Court agrees with the Tenth Circuit's reasoning and will not give AGL-C-2XPUN a more restrictive or narrow construction.

Nevertheless, if Quintero's injuries arose out of or in the course of his employment for the more limited purpose of workers' compensation law, those injuries would have necessarily arisen out of or in the course of his employment in a more general, broad sense. *See Prescott Companies, Inc.*, 2010 WL 1495430 at *5 (Taking into account that exclusions for bodily injury to employees are broader than workers' compensation obligations, "a reasonable interpretation of the phrase 'arising out of and in the course of employment' is that, at minimum, it includes injuries that would be deemed to 'arise out of and in the course of employment' under workers' compensation law."). Consequently, the Court will first examine whether ACIC's reference to New Mexico workers' compensation cases provides support for ACIC's argument that the undisputed facts show that Quintero's injuries arose out of or in the course of his employment. If the New Mexico workers' compensation cases do not support ACIC's argument, then the Court will look at other case law and the broader construction of "arising out of or in the course of employment" to determine if Quintero's injuries arose out of or in the course of his employment.

*(1) New Mexico Workers' Compensation Cases*

ACIC argues that even accepting as true TSI, Ramos, and Leprino's contention that Quintero stepped off the designated walkway into an unauthorized area to cool himself in front of a ventilation fan, workers' compensation law supports ACIC's assertion that Quintero's injuries arose out of or in the course of his employment. ACIC correctly notes that neither TSI, Ramos, nor Leprino cite to any legal authority for their assertion that a genuine issue of material fact exists as to whether Quintero's injuries arose out of or in the course of employment.

ACIC cites to New Mexico workers' compensation cases adopting the premises rule and the personal comfort doctrine. New Mexico has, as several other states have, adopted a premises rule for defining when an action occurred in the "course of employment." Under the premises rule, "a workman, while on the employer's premises coming to or going from the actual workplace is in a place where the employee is reasonably expected to be, and that he is engaged in a necessary incident of employment." *Dupper v. Liberty Mut. Ins. Co.*, 105 N.M. 503, 506, 734 P.2d 743, 746 (1987). In other words, the "'course of employment' includes not only the time for which the employee is actually paid but also a reasonable time during which the employee is necessarily on the employer's premises while passing to or from the place where the work is actually done." Dupper, 105 N.M. at 506, 734 P.2d at 746. New Mexico and other states have also adopted a personal comfort doctrine in which "course of employment" includes such activities as a lunch break on the employer's premises which occurs as a regular incident of the employment. *See, e.g., Beckham v. Brown's Estate*, 100 N.M. 1, 4, 664 P.2d 1014, 1018 (Ct. App. 1983). Specifically, the personal comfort doctrine does not apply if "'the extent of the departure [to minister to personal comfort] is so great that an intent to abandon the job temporarily may be inferred, or ..., in some jurisdictions, the method chosen is so unusual and

14

unreasonable that the conduct cannot be considered an incident of the employment.'" *Whitehurst v. Rainbo Baking Co.*, 70 N.M. 468, 470, 374 P.2d 849, 850 (1962) (quoting 1 *Larson's Workmen's Compensation Law* §21.00 at 297).

Although it is undisputed the Quintero was injured on the "premises" on his way to lunch, assuming Quintero knowingly left a designated walkway and went into an unauthorized area, a reasonable jury could find that Quintero was not "in a place where the employee is reasonably expected to be" nor was he "passing to or from the place where the work is actually done." The premises rule would, therefore, not apply as a matter of law. Moreover, the personal comfort doctrine would not apply as a matter of law because a reasonable jury could find that either Quintero's decision to leave the designated walkway despite being instructed not to do so showed an intent to temporarily abandon his job or that Quintero's purposeful decision to leave the designated walkway into an unauthorized and dangerous area was "so unusual and unreasonable that the conduct cannot be considered an incident of the employment." Hence, ACIC is not entitled to summary judgment based on the more narrow workers' compensation definition of "arising out of or in the course of employment."

> *(2) Other New Mexico Case Law and the Broad Construction of Employee Injury Exclusion Provisions*

Although the workers' compensation cases do not warrant summary judgment in ACIC's favor, there is a New Mexico insurance case that is helpful to ACIC. In *Lucero v. New Mexico Public School Ins. Authority*, 119 N.M. 465, 892 P.2d 598 (1995), Plaintiff Dena Lucero, a student employee, testified that she was involved in an automobile accident while driving a school vehicle. Plaintiff Dena Lucero further testified that the school district had given her

15

permission to drive the school vehicle to run a personal errand and an office errand.[4]  The accident occurred when Plaintiff Dena Lucero drove on an interstate highway to "cruise" before returning the vehicle to the school district.

The school district's automobile liability insurance policy had a provision which excluded coverage for injuries incurred by employees "in the course of their employment." *Id*. at 466, 892 P.2d at 599.  The New Mexico Supreme Court broadly construed the phrase "in the course of their employment" by concluding "as a matter of law that the alleged fact that Dena temporarily deviated from her duties before returning the vehicle to the School District would not change her status under the policy ... as an employee 'injured in the course of [her] employment.'" *Id*. at 467, 892 P.2d at 600. The Court notes that the *Lucero* case does not indicate whether a school district official instructed Plaintiff Dena Lucero beforehand not to go "cruising" in a school vehicle.  Whether this issue would be significant in deciding if injuries arise out of the course of employment is simply not raised.  Applying *Lucero* generally and accepting TSI, Ramos, and Leprino's contention that Quintero left the designated walkway despite having been told previously not to leave the walkway, Quintero, like Plaintiff Dena Lucero, temporarily deviated from his employment duties.  Under *Lucero*, Quintero's temporary deviation from his employment duties would not, as a matter of law, affect his status as an employee injured "in the course of employment."

Even if *Lucero* is not sufficiently analogous to this case, a reasonable jury would be hard-pressed to find that Quintero's injuries did not originate, grow out of, or flow from his

---

[4]Even though a school employee denied giving Plaintiff Dena Lucero permission to drive a school vehicle on the day of the accident, the New Mexico Supreme Court accepted Plaintiff Dena Lucero's testimony for summary judgment purposes.

employment. Specifically, if Quintero had not been employed by TSI, he would have not been present on the roof of the Roswell Leprino plant nor would he have felt a need to cool off in front of a fan. In other words, there is at the very least "some causal connection or sufficient nexus" between Quintero's injuries and his employment. In sum, considering the *Lucero* case and the broad construction of "arising out of or in the course of employment" in New Mexico insurance cases, the Court concludes that even viewing the evidence in the light most favorable to TSI, Ramos, and Leprino, ACIC has proven, as a matter of law, that Quintero's injuries arose out of or in the course of his employment with TSI.

> *2. Does the Exception in Exclusion b for Insured Contracts Provide Coverage for Quintero's Injuries or Otherwise Create a Ambiguity?*

Leprino argues, in the alternative, that the Policy unambiguously provides in Exclusion b that if liability for damages is assumed in an insured contract and the bodily injury occurs after the execution of the insured contract, then the Policy will provide coverage for bodily injuries. Leprino notes that the May 17, 2007 contract between TSI and Leprino included an insured contract and that Quintero's injuries occurred subsequent to the execution of that contract. Hence, Leprino concludes that the Exclusion b insured contract exception applies and that under the Policy ACIC owes a duty to TSI and Leprino, as insureds, to provide a defense and indemnification, if necessary. Leprino further argues that there is an ambiguity in the Policy because the language in Exclusion b's exception for an insured contract conflicts with AGL-C-2XPUN which provides that the employee injury exclusion applies to "any obligation assumed by an insured under any contract."

In New Mexico, insurance policies are construed under the same principles used in construing contracts generally. *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶18, 123 N.M.

752. The New Mexico Court of Appeals has summarized the law on ambiguous insurance policy provisions as follows:

> The insurance contract is construed as a whole. Any ambiguity is construed against the insurer, and exclusions must be clearly expressed in the policy. When a court interprets the terms of an insurance policy that is unclear and ambiguous, the reasonable expectations of the insured guide the analysis. However, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written.

*Truck Ins. Exchange,* 2001-NMCA-092 at ¶7 (citations omitted). Generally, "[a]mbiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 1997-NMSC-041 at ¶19. To determine if there is an ambiguity, the language at issue should be viewed "'from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, prior to and contemporaneous with the making of the policy.'" *Id*. (quoting Lee R. Russ & Thomas F. Segalla, 2 *Couch on Insurance 3d* §21:14 (1996)). Moreover, exclusions will not be enforced if "they irreconcilably conflict with the insuring clause." *Western Heritage Ins. Co. v. Chava Trucking, Inc.*, 991 F.2d 651, 655 (10th Cir. 1993). In addition, the Court "will not create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations." *City of Santa Rosa v. Twin City Fire Ins. Co.*, 2006-NMCA-118, ¶7, 140 N.M. 434. Finally, "[w]hether a contractual provision is susceptible to reasonable but conflicting meanings, that is, whether there is a lack of clarity or ambiguity, is a question of law." *Krieger*, 2006-NMCA-034 ¶12. Where the language is ambiguous, an appropriate fact finder must resolve the ultimate factual questions. *Id*.

ACIC does not dispute that the insured contract exception under Exclusion b applies to the insured contract between TSI and Leprino. Leprino also does not dispute that the language in both Exclusion b and AGL-C-2XPUN is unambiguous when each exclusion is read separately. *See, e.g.,* David L. Leitner, Reagan W. Simpson, and John M. Bjorkman, 1 *Law and Practice of Insurance Coverage Litigation* §6:22 (database updated July 2010) ("The exclusion for bodily injury arising out of and in the course of employment has ... been held to be unambiguous."). The issue, then, is whether any perceived conflict between the Exclusion b exception for insured contracts and AGL-C-2XPUN's application to obligations assumed under a contract constitutes an ambiguity. Several state courts have held that an ambiguity is not created when two exclusions (including any exceptions contained therein) apparently contradict each other but are each internally unambiguous. *See, e.g., Pesta v. City of Johnstown*, 2007 WL 6955290 *3 (N.Y. Sup. 2007) (unpublished decision). "Exclusions in policies of insurance must be read seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another." *Zandri Construction Co. v. Firemen's Insurance Co. of Newark*, 81 A.D.2d 106, 109 (1981), *affd. sub nom. Zandri Construction Co. v. Calkins*, 430 N.E.2d 922 (N.Y.). *See also* Allan D. Windt, 2 *Insurance Claims and Disputes 5th* § 6:2 ("If any exclusion applies, there should be no coverage regardless of the inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions."). Otherwise, if the first exclusion (including any exceptions) always applied there would be no need for any subsequent exclusions. *Zandri Construction Co.*, 81 A.D.2d at 109. Applying this generally accepted case law, an ambiguity is not created by the mere fact that Exclusion b and AGL-C-2XPUN seem to conflict with each other. In other words, even if the insured contract exception to Exclusion b applies, AGL-C-2XPUN excludes Quintero's injuries from coverage

under the Policy because 1) Quintero's injuries arose out of or in the course of his employment with TSI, and 2) AGL-C-2XPUN applies to obligations assumed by an insured under a contract. TSI, Ramos, Leprino, and Quintero are, therefore, not entitled to a defense or indemnification under the Policy. Accordingly, ACIC is entitled to summary judgment in its favor.

IT IS ORDERED that:

1. TSI and Ramos' request to strike ACIC's fact number 18 is denied;

2. Atlantic Casualty Insurance Company's Motion for Summary Judgment (Doc. No. 18) is granted; and

3. summary judgment will be granted in ACIC's favor in that TSI and Leprino's claims against ACIC will be dismissed with prejudice and a declaratory judgment against TSI, Ramos, Leprino, and Quintero will be entered in ACIC's favor in which it is declared that ACIC has no duty to defend or to provide insurance coverage or benefits to TSI, Ramos, Leprino, and Quintero.

_____
SENIOR UNITED STATES DISTRICT JUDGE